UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS CORHN,

      Plaintiff,

                             Case Number 12-CV-13059

v.

                             District Judge Gershwin A. Drain

COUNTY OF BAY, et. al.,                Magistrate Judge R. Steven
                                             Whalen

      Defendants,

_____/

**REPORT AND RECOMMENDATION**

Plaintiff Dennis Corhn, presently confined at the Oaks Correctional Facility in Manistee, Michigan, has filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. Before the Court is Defendant Bay County's Motion for Summary Judgment [Doc. #43], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED, and that Defendant Bay County be DISMISSED WITH PREJUDICE.

## I.  FACTS

In 2010 and 2011, at the time of the events giving rise to this lawsuit, Plaintiff was incarcerated in the Bay County Jail for an unspecified criminal sexual conduct charge. Plaintiff alleges in his amended complaint [Doc. #14] that on September 16, 2011, James Lapan, another inmate, assaulted him in the jail after warning plaintiff that "CSC people" were not permitted to touch the television set. When plaintiff ignored Lapan and

-1-

attempted to change the channel, Lapan punched plaintiff, shattering plaintiff's jaw.

Plaintiff alleges that he alerted jail officers, who took him to see the jail nurse, whom he identifies in the amended complaint as defendant "Jane Doe." Plaintiff claims that Doe was aware that plaintiff's jaw was broken, but informed him that his jaw could not be re-set until the swelling had gone down, that she was not the head nurse, and that he could not see the jail doctor until September 20, 2011. Doe had plaintiff placed in the observation cell, where he continued to bleed and his jaw continued to swell. Plaintiff claims that he passed out from the pain and woke up in a pool of blood, with his jaw "sliding about." On Sunday, September 18, 2011, plaintiff woke up in even greater pain, was unable to feel any part of his chin, and noticed that his mouth and jaw were getting worse. Plaintiff was finally taken to the hospital, where surgery was performed on September 23, 2011. Plaintiff claims that defendant Doe should have requested that plaintiff be taken to medical professionals to be treated for his serious injury.

Plaintiff brings the following claims against Defendant Bay County: (1) an Eighth Amendment claim of deliberate indifference to his serious medical needs, based on "a policy of not sending injured inmates to emergency unless a head nurse gave authority," *Amended Complaint*, ¶ 51, giving Defendant Head Nurse Jody LNU authority to treat Plaintiff for pain, *id*. ¶ 52, and adopting a policy of not permitting inmates to be prescribed pain killing drugs, *id*. ¶ 100; and (2) a Fourteenth Amendment due process

-2-

claim based on the decision to not criminally prosecute James Lapan for assault.[1]

At his deposition, Plaintiff testified that after Lapan punched him, his tooth was knocked into his gums, and he bled heavily. He pushed the "panic button," and was taken to the nurses' station. *Defendant's Exhibit 2 [Doc. #43], Deposition of Dennis Corhn*, at 56-58.  The nurse he identifies as "Jane Doe 1" told him that his jaw was broken, and commented on his swollen jaw.  *Id*. at 58.[2] Jane Doe 1 told him that she could not send him to an emergency room because she was not the head nurse, and that the head nurse, whose name was Jodi, would not be in until the following Monday.  The incident occurred on Friday, September 16, 2011.  *Id*. at 59-60. According to the Plaintiff, Jane Doe 1 told him that his jaw was broken, and that it could not be properly treated until the swelling went down.  The Plaintiff complained of pain, and the nurse gave him Tylenol and some ice.  *Id*. at 61.

The Plaintiff was then taken to an observation room, where he told a Corrections Officer that he wanted to press charges against Lapan. An "Officer Jimmy" took photographs of his injury.  Plaintiff testified that Officer Jimmy told him that only the head nurse could send him to any emergency room.  *Id*. at 63-64.

---

[1] In this motion, the Defendant presents an argument involving a proposed amended claim for failure to protect. However, that claim was not brought in the second amended complaint, which is the subject of this motion. Rather, the Plaintiff raises that claim in a pending motion to file a third amended complaint. That motion will be decided by separate order.

[2] In his response to this motion [Doc. #50], he for the first time identifies this "Jane Doe" as Nurse Sue Caldwell.

The next morning, Saturday, September 17, Plaintiff was seen by Nurse John Doe. Plaintiff told John Doe that he was in pain, and that he wanted to go to the emergency room. John Doe told him that the head nurse would be in on Monday, and the doctor would be in on Tuesday. *Id.* at 65. He was given Ibuprofen in the observation room. *Id.* at 76. Later that day, a nurse identified as Jane Doe 2 saw the Plaintiff. The Plaintiff asked to go to the emergency room, but Jane Doe 2 told him that only the head nurse could authorize that. *Id* at 67.

Nurse John Doe 1 saw the Plaintiff on Sunday, and later, Head Nurse Jodi examined him. Plaintiff testified that she told him that his jaw would probably have to be wired. He asked to go to the emergency room because of the pain, but Nurse Jodi told him that the emergency room personnel would simply take x-rays and send him back to the jail. *Id.* at 70-71. Later that day, he was told that Head Nurse Jodi signed an order for him to be taken "off campus." He was taken to a clinic where x-rays were taken, and he was then returned to the observation room. *Id.* at 73-76.

The Plaintiff testified that between Friday and Monday, he saw three nurses in addition to Head Nurse Jodi. *Id.* at 82. On Tuesday, he was taken off-site to see a Dr. Hyde, who diagnosed him with a broken jaw, based on the x-rays that were taken on Sunday. Dr. Hyde set up a future date for surgery, but did not prescribe pain medication at that time. *Id.* at 86-89. Dr. Hyde did prescribe a mouthwash and some vitamins. *Id.* at 90. He performed surgery on Plaintiff's jaw on the following Friday, September 23.

-4-

Plaintiff was given Vicodin at the hospital, and was discharged with a prescription for Tylenol #3.  *Id*. at 92-93.  He took the Tylenol 3s for some period of time, but was eventually told that he was "done with those," and was switched to non-narcotic Tylenol. *Id*. at 101-104.  He was subsequently prescribed, and is still taking, Naproxyn.  *Id*. at 97, 112.

The Plaintiff's medical records appear at Exhibits 8 and 9 of Defendant's brief. Jail treatment notes indicate that Plaintiff was examined by a nurse at 6:00 p.m. on September 16, 2011. The examination revealed bleeding and swelling of the jaw and mouth and damage to teeth.  Gauze was applied with pressure to the upper and lower jaws. An ice pack was given, along with Ibuprofen for pain, and Plaintiff was "taken to Intake for medical watch."  Two hours later, it was noted that the bleeding had stopped. The Plaintiff was advised to use the ice pack.  The next day, September 17, the Plaintiff complained of pain, but showed no signs of acute distress. He was given Acetaminophen, 650 mg, three times per day, with ice packs as needed, and was instructed to maintain a soft diet. (A soft diet had been ordered on September 16). On September 18, the second shift was directed to bring the Plaintiff to hospital or clinic for x-rays.  Plaintiff's jaw was x-rayed, and the x-ray was interpreted by Dr. Sanjay J. Talati, M.D.

On Monday, September 19, Plaintiff was examined at the jail by a Nurse Caldwell, R.N., who ordered a surgical consult with Dr. Hyde for the following day (Monday). She noted that Plaintiff was receiving Tylenol, 650 mg, three times per day.

-5-

On September 20, Plaintiff was seen by Dr. Hyde for a "fracture consult." A Bay County Order Form signed on the same date indicates that Plaintiff was to be given Ibuprofen, 650 mg, twice a day for 10 days, "per supervisor."

Discharge notes by Dr. Hyde show that Plaintiff was discharged following surgery on September 23, 2013, with prescriptions for Tylenol #3, Keflex, and Chlorhexicine. A Bay County Jail Physician Visit/Order Form, signed by a Dr. Natole, indicates that Plaintiff was to take Keflex twice a day for 10 days, and Tylenol #3 as needed for three days only. The Order Form indicated that Plaintiff was to be continued with Ibuprofen, 600 mg, starting September 27.

Appended to Defendant's brief as Exhibit 5 is the affidavit of Captain Troy Stewart, the Bay County Jail Administrator. He states that jail inmates are classified according to four categories: (1) whether the current offense is assaultive in nature; (2) whether the inmate has a prior assaultive felony conviction; (3) whether the inmate has a history of escapes; and (4) whether the inmate has past or present institutional behavior problems. *Troy Affidavit*, ¶ 5. Inmates with criminal sexual conduct charges and/or convictions are not placed in designated units or in protective custody. *Id*. ¶ 6. Captain Troy states that a report of the incident between Plaintiff and James Lapan was turned over to the County Prosecutor, "who declined to pursue charges against James Lapan." *Id*. ¶ 7.

Captain Troy states that "[m]edical services at the Bay County Jail are provided by

a private contractor, Correctional Healthcare Companies, Inc. ('CHC'). CHC is responsible for all medical decision-making related to inmate care."

Defendant's Exhibit 10 is a Bay County Warrant Authorization Request in which the Bay County Prosecutor's Office declined prosecution of James Lapan, noting, "People aren't conv[inced] they can prove beyond a reasonable doubt."

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a

whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III.   DISCUSSION

#### A.   Failure to Prosecute

Plaintiff brings a Fourteenth Amendment due process claim based on Defendant's alleged failure to prosecute James Lapan for assault. There is no viable legal or factual basis for this claim.  Captain Troy states in his affidavit that Jail officials presented the facts to the Bay County Prosecutor's Office.  The Prosecutor's Office reviewed the facts and made the discretionary decision not to prosecute.  A private citizen has no

-8-

constitutionally recognized right to have a prosecutor investigate a case or initiate a

prosecution.  *See Doe v. Mayor and City Council of Pocomoke City,* 745 F.Supp. 1137,

1138 (D.Md.1990)(there is no "constitutional, statutory, or common law right that a

private citizen has to require a public official to investigate or prosecute a crime."). *See*

*also Walker v. Schmoke,* 962 F.Supp. 732, 733 (D.Md.1997) ("[N]o federal appellate

court, including the Supreme Court ... has recognized that there is a federally enforceable

right for the victim to have criminal charges investigated at all, let alone with vigor or

competence."); *Fulson v. City of Columbus,* 801 F.Supp. 1, 6 (S.D.Ohio 1992) ("A public

official charged with the duty to investigate or prosecute a crime does not owe that duty

to any one member of the public, and thus no one member of the public has a right to

compel a public official to act.").  In *White v. City of Toledo*, 217 F.Supp.2d 838, 842

(N.D.Ohio 2002), the court explained:

> "This doctrine is the logical consequence of the Supreme Court's ruling in
> *DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 195,
> 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), that 'nothing in the language of the
> Due Process Clause itself requires the State to protect the life, liberty, and
> property of its citizens against invasion by private actors.' Just as the state
> in that case had no constitutional duty to protect a child whose mother
> claimed was being abused by its father, the officers and City in this case had
> no constitutional duty to conform their investigation to the dictates or
> desires of the plaintiffs."

In addition, the Prosecutor is protected by absolute prosecutorial immunity because

his alleged conduct was "intimately associated with the judicial phase of the criminal

process." *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128

-9-

(1976). Protected prosecutorial conduct includes action taken in conjunction with

decisions whether or not to prosecute. *See Burns v. Reed,* 500 U.S. 478, 486, 111 S.Ct.

1934, 114 L.Ed.2d 547 (1991); *Siano v. Justices of Massachusetts,* 698 F.2d 52 (1st

Cir.1983); *Meade v. Grubbs,* 841 F.2d 1512 (10th Cir.1988).

## B.    Deliberate Indifference

The Supreme Court has held that Under the Eighth Amendment, prisoners have a

constitutional right to medical care.  *Estelle v. Gamble,* 429 U.S. 97, 103; 97 S.Ct. 285, 50

L.Ed.2d 251 (1976).  Prison officials may not act with deliberate indifference to the

medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two

components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825,

834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702

(6th Cir. 2002). Under the objective component, "the plaintiff must allege that the medical

need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff

must allege facts which, if true, would show that the official being sued subjectively

perceived facts from which to infer substantial risk to the prisoner, that he did in fact

draw the inference, and that he then disregarded that risk." *Id.* Deliberate indifference

may be established by showing an interruption of a  prescribed plan of treatment, or a

delay in medical treatment.  *Id.*; *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992).

However, mere negligence or misdiagnosis of an ailment does not rise to the level of a

constitutional violation.  *Estelle,* 429 U.S. at 106; *Comstock,* 273 F.3d at 703.  "Where a

prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th cir. 1976). *See also Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1999), citing *Estelle v. Gamble, supra*, 97 S.Ct. at 292 ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition").

In this case, Plaintiff has met the objective prong of the deliberate indifference test, in that he had a sufficiently serious and obvious injury. As to the subjective prong, however, he in fact received medical attention from the time of his injury on Friday, September 16 through and after his surgery on Friday, September 23. On Friday through Monday he was given ice to reduce the swelling in his jaw, as well as Acetaminophen and Ibuprofen. (Ibuprofen has both anti-inflammatory and analgesic properties). He was placed in observation, and periodically saw nurses. On Sunday, he was taken for x-rays, and on Tuesday he saw Dr. Hyde. Significantly, Dr. Hyde did not prescribe any narcotic pain medication at that time, but continued him on Ibuprofen. Also, Dr. Hyde did not schedule surgery until Friday, September 23. Following surgery, Plaintiff was prescribed Tylenol #3 for only three days, after which he was to be given Ibuprofen.

While I appreciate Plaintiff's complaint that he was not taken to an emergency room to see a doctor immediately after he was injured, as would likely be the case with an individual in free society, and while neither Bay County nor Correctional Healthcare

-11-

Companies may be deserving of an award for outstanding medical care, the fact is he did receive treatment and medical attention adequate to overcome an Eighth or Fourteenth Amendment claim. That he disagreed with the course of treatment, or would have preferred to initially have a narcotic pain medication, does not state a constitutional claim. *See White v. Napoleon,* 897 F.2d 103, 110 (3d Cir.1990)(disagreements over medical judgment or treatment cannot form the basis of an Eighth Amendment claim).

Plaintiff fares no better to the extent that he bases his claim on a delay in treatment. In *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 -743 (6th Cir. 2001), the Sixth Circuit, adopting the approach of the First, Third, and Eleventh Circuits, held that "'[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.'" *Id*., quoting *Hill v. Dekalb Regional Youth Detention Center,* 40 F.3d 1176, 1188 (11th Cir.1994).  Plaintiff has shown no detrimental effect arising from a delay in treatment. Indeed, Dr. Hyde saw the Plaintiff on Tuesday but did not schedule surgery until the following Friday.

Finally, Plaintiff's claim against present Defendant Bay County, based on supervisory liability, must be dismissed. In *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court specifically held that in a §1983 action, liability cannot be based on a theory of *respondeat superior*, or mere supervisory liability.  "A municipality cannot be held liable

-12-

*solely* because it employs a tortfeasor - - or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.*, 436 U.S. at 691. (Emphasis in original).   The *Monell* Court did find that when the acts of individual employees represent the government's custom or policy, the municipality can be held liable. *Id* at 638. In this case, however, Plaintiff has not shown any non-speculative facts indicating a Bay County Jail policy that results in Eighth Amendment violations.  Indeed, as discussed above, the Plaintiff has not shown an underlying Eighth Amendment violation by any Bay County or CHC employee, so the lack of supervisory liability is even more obvious.

Accordingly, Plaintiff's Eighth Amendment claim must be dismissed.

## IV.   CONCLUSION

For these reasons, I recommend that Defendant Bay County's Motion for Summary Judgment [Doc. #43] be GRANTED and that Defendant Bay County be DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not

-13-

preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: August 11, 2014

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on August 11, 2014, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen

-14-